```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

MICHAEL WAYNE BARRON,              )
                                   )
           Plaintiff,              )
                                   )
                                   )   Case No. CIV-20-432-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
           Defendant.              )
```

## REPORT AND RECOMMENDATION

Plaintiff Michael Wayne Barron (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 46 years old at the time of the ALJ's decision. He has at least a high school education and no past relevant work. Claimant alleges an inability to work beginning on July 22, 2017, due to limitations resulting from lower back nerve damage, bulging disc in back, human immunodeficiency virus (HIV), and depression.

## Procedural History

On October 23, 2018, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 11, 2020, ALJ Thomas Cheffins conducted a telephonic hearing from Hot Springs, Arkansas, in which Claimant

participated and testified. On May 29, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on October 30, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) excluding proven limitations from the RFC (with various subparts), and (2) making improper findings at step five of the sequential analysis.

### RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of depressive disorder, HIV, congenital lumbar fusion at L4/L5 with radiculopathy, and polyneuropathy. (Tr. 14). He determined Claimant could perform sedentary work with additional limitations. Claimant could occasionally stoop, kneel, crouch, and crawl. He was unable to climb ladders, ropes, or scaffolds. Claimant was to avoid concentrated exposure to extreme cold and excessive vibrations. He could make simple, work-related

decisions, maintain concentration, persistence, and pace for simple tasks, and understand, carry out, and remember simple work instructions and procedures. Claimant could adapt to changes in the work setting that were simple, predictable, and easily explained. Supervision of Claimant should be simple, direct, and concrete. (Tr. 17).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of cutters and pasters and table workers, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 22). As a result, the ALJ concluded Claimant had not been under a disability since October 23, 2018, the date the application was filed. (Tr. 23).

Claimant contends the ALJ's RFC assessment is not supported by substantial evidence for several reasons. He first asserts that an RFC for sedentary work is unsupported because he cannot sit for extended periods of time, needs to change positions frequently, and cannot sustain activity for eight hours per day.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts

5

. . . and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Moreover, a court cannot reweigh the evidence, as it reviews only the sufficiency of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ specifically considered the medical evidence and the Claimant's reported problems regarding his back and leg pain and his weakness associated with HIV and neuropathy. The ALJ noted that Claimant's HIV had not progressed to AIDS and that he was taking medication to manage the disease with good results. (Tr. 19, 318, 515-20). Claimant's activity level remained good, and his reported activities supported his being able to perform unskilled sedentary work. (Tr. 19, 48-49, 415, 515).

The ALJ also discussed the evidence regarding Claimant's lumbar back pain and neuropathy in his lower extremities. He noted Claimant's MRI scans from 2017 and 2018, which demonstrated degenerative disc disease of the lumbar spine with evidence of moderate to severe neuroforaminal narrowing and some canal stenosis. He noted that in 2017, Claimant reported his pain level as moderate. The ALJ discussed Claimant's treatment with medication and injections, his periodic gait abnormalities, but also Claimant's examinations showing normal gait. He noted surgery had not been recommended for Claimant and that although Claimant testified he was prescribed an assistive device, there was no evidence of a prescription or recommendation for an assistive device in the record, nor was it noted during his examinations that he used an assistive device. The ALJ relied upon Claimant's physical examination in August of 2019, which indicated Claimant had normal motor function and stability of the lower extremities.

7

The ALJ also noted that although Claimant reported that his epidural steroid injections were ineffective, he reported in March of 2020 that the medication he was taking had improved his musculoskeletal pain. (Tr. 19, 318-21, 328-29, 331-32, 415-19, 424-25, 462-67, 505-06, 510-11, 515-17, 518-20). The ALJ determined that taking the medical evidence into account in addition to Claimant's testimony and reports as to his activities, including that he mowed three small lawns twice per month, his back and neurological impairments would limit Claimant to sedentary work with postural and environmental restrictions in the RFC. (Tr. 19-20).[2]

The ALJ further considered the medical opinion evidence, including Claimant's physical examination by consultative examiner Chester Carlson, D.O., in August of 2019, wherein Dr. Carlson did not find any specific limitations (Tr. 20, 443-47), and the opinions of the state agency reviewing physicians in January and August of 2019 that Claimant could perform light work without including any additional limitations (Tr. 21, 103-05, 118-21). The ALJ found these opinions only partially persuasive, as he determined that the evidence supported that Claimant's back and

---

[2] Claimant argues that the ALJ failed to account for a medical opinion from his treating physician that Claimant would need to take a break from activity every 30-40 minutes. See Plaintiff's Brief, p. 10 (Docket Entry #16). However, a review of the record shows that this was not a medical opinion, but it was Plaintiff's own report to the nurse who examined him in February of 2016. (Tr. 481-83).

neurological impairments would limit Claimant to sedentary work with postural and environmental limitations. (Tr. 20-21).

Claimant next argues that the ALJ failed to properly develop the record as to his mental impairments or sufficiently include mental limitations in the RFC. The ALJ noted that Claimant was diagnosed with major depressive disorder by his primary care physician. He noted Claimant's treatment with medication, that Claimant attended therapy, and that Claimant stopped therapy because he found it was ineffective. The ALJ noted that Claimant remained capable of performing several daily tasks, he had not been hospitalized for mental health issues, and his records failed to show any significant cognitive deficits. (Tr. 20, 272-79, 345-49,415-19, 464-67, 515, 519). He also considered the opinions of the state agency psychologists – one determined Claimant did not have a severe mental impairment and the other determined Claimant's mental impairment was severe and he could perform semi-skilled work. (Tr. 21, 102-03, 121-23). The ALJ determined that Claimant's depressive disorder resulted in more limiting functional limitations than those found by the state agency psychologists. (Tr. 17, 21). The ALJ adequately addressed Claimant's mental impairments in the RFC assessment. He discussed the evidence and explained why he included certain mental limitations in the RFC.

Moreover, there was no error by the ALJ for not ordering a mental consultative examination of Claimant. The record contained

9

sufficient information for the ALJ to make a mental RFC determination, and Claimant's counsel did not request any additional development of the record by the ALJ. *See Cowan v. Astrue*, 552 F.3d 1182, 1187-88 (10th Cir. 2008) (noting ALJ's responsibility for development of the record and that the duty is satisfied when the record contains sufficient information to make a disability determination and there was no request by counsel for further development), quoting *Hawkins*, 113 F.3d at 1167-68 ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.") (citation omitted). Here, Claimant's counsel agreed the record was complete and did not object to the exhibits. (Tr. 34-35). There was no request by counsel for a consultative psychological examination of Claimant.

Claimant further asserts that the ALJ failed to evaluate his subjective complaints in accordance with the appropriate factors. Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to

substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

When considering Claimant's subjective complaints, the ALJ summarized Claimant's testimony, noted the specific factors he considered, and found that "restricting the [C]laimant to performing the range of work described . . . adequately addresse[d] the location, duration, frequency, and intensity of the [C]laimant's alleged symptoms as well as precipitating and aggravating factors." (Tr. 18-19). He thoroughly discussed the medical evidence regarding Claimant's HIV, lumbar back pain, neuropathy and polyneuropathy of the lower extremities, and depressive disorder, and he noted certain inconsistencies in the evidence based upon Claimant's complaints. He also relied upon the nature of Claimant's treatment and that in some instances Claimant

11

reported that certain conditions improved with medication. The ALJ further relied upon Claimant's reports of activities, including his testimony that he mowed three small lawns twice per month for a small amount of income. (Tr. 18-21). After considering the evidence and discussing the factors relied upon, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20). This Court finds no error in the ALJ's analysis of Claimant's subjective complaints.

The ALJ determined Claimant has the RFC to perform sedentary work with additional limitations, including postural limitations of only occasional stooping, kneeling, crouching, and crawling and being unable to climb ladders, ropes, or scaffolds. The ALJ included environmental limitations that Claimant must avoid concentrated exposure to extreme cold and excessive vibrations. Regarding Claimant's mental impairment, the ALJ limited Claimant to making simple, work-related decisions, noting he could maintain concentration, persistence, and pace for simple tasks. Claimant could understand, carryout, and remember simple work instructions and procedures, and he could adapt to changes in the work setting that were simple, predictable, and easily explained. He required simple, direct, and concrete supervision. In reaching this RFC

determination, the ALJ considered Claimant's testimony, treatment records, and medical opinions in the record. This Court finds no error in the ALJ's RFC determination, as it was supported by substantial evidence.

### Step-Five Determination

Claimant asserts the ALJ's hypothetical questioning of the VE was incomplete because he failed to include all of Claimant's limitations in the RFC. This Court has determined that the ALJ's consideration of Claimant's impairments was appropriate and the limitations imposed in the RFC were supported by substantial evidence. The ALJ's questioning of the VE accurately reflected his properly determined RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted).

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections,

with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of January, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE